[Civ. No. 4167.  Third Appellate District.—May 7, 1931.]

HARRY J. ELSEY, Respondent, v. CHESTER DOMECQ et al., Appellants.

Roy B. Maxey and Charles W. Haswell for Appellants.

G. B. Hjelm, Harold L. Hjelm and Griffin & Boone for Respondent.

MR. JUSTICE THOMPSON (R. L.), DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment for damages for personal injuries which were sustained as the result of an automobile collision.

The plaintiff was employed as a clerk by Lee Brothers, who were merchants at Turlock. On December 21, 1928, at 11 o'clock in the morning the plaintiff was engaged in driving his employer's Oldsmobile coupe along the Tuolumne road near Turlock. This roadway was approximately thirty feet wide. It was practically level for the entire width. The traveled portion of the road was eighteen feet in width. It was constructed of dirt. At the same time Chester, the minor son of the defendant Louis Domecq, was driving his father's truck in the opposite direction

along the same highway. A heavy fog prevailed, which obscured the view to considerable extent. The plaintiff's headlights were switched on. The left window of his car was open. He was traveling at the rate of twenty miles an hour on his right-hand side of the road about two feet from the center line thereof. He observed the approaching truck through the fog when it was about seventy-five feet distant. He testified that the truck was running without lights. When he reached a point fifteen or twenty feet from the truck and saw that it was coming dangerously near his line of travel, he promptly turned to his right. The truck, however, crashed into his car. The plaintiff further testified that when he first saw the truck approaching it was running "in the center of the traveled portion of the road". He said, "It changed towards me; it may have changed some. . . . Q. The truck was on the crown of the road with the wheels equidistant from the imaginary center line? A. Yes sir. . . . At the time, I seen the truck was not going to turn to his side of the road, I made a turn to my right, . . . approximately four feet. . . . I [then] made a sharp turn."

In spite of the plaintiff's effort to avert the accident a collision occurred. The plaintiff was seriously injured as a result of the impact. Both bones of the left forearm were fractured; the right wrist was broken; the kneecap and tendons in that vicinity were injured; there were numerous bruises and contusions, and he was seriously injured internally. The jury returned a verdict in favor of the plaintiff in the sum of $5,000. A judgment for that amount was accordingly rendered. From this judgment an appeal was perfected.

The appellants contend that the evidence shows the plaintiff to have been guilty of contributory negligence. It is also asserted that reversible error occurred in the disclosure of evidence of the interest of an insurance company in the outcome of the cause; that counsel for the plaintiff were guilty of prejudicial misconduct, and that the court erred in giving and refusing certain instructions.

There is no merit in the contention that the plaintiff was guilty of contributory negligence. While there is a conflict of evidence regarding the rate of speed at which both machines were running, and concerning various other

circumstances involved in the collision, it may not be said as a matter of law that the plaintiff was guilty of contributory negligence. The question of contributory negligence under the circumstances of this case was a problem for the determination of the jury. (19 Cal. Jur. 735, sec. 141; *Swartz* v. *Acme Exp. & D. Co.*, 102 Cal. App. 615 [283 Pac. 358].) ■ Where the circumstances are such that reasonable minds may differ regarding the question as to whether a plaintiff is guilty of contributory negligence, a judgment in his favor will not be disturbed on appeal. (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125].)

■ We are of the opinion the reference to an insurance company alluded to by counsel on the cross-examination of Chester Domecq was not prejudicial error, under the circumstances of this case. The Aetna Casualty and Surety Company of Hartford was originally a party to the action. This company carried insurance on all employees of Lee Brothers mercantile establishment. This insurance company intervened in the action, and was represented by its attorney, Mr. Boone. The second day of the trial, the complaint in intervention was dismissed. Mr. Boone was then associated as counsel for the plaintiff. He was personally engaged in cross-examining Chester Domecq at the time of the introduction of the challenged evidence. It must have been apparent to the jury he was attempting to protect the interest of his own company against an adverse judgment. He asked the witness the following question: "Now, did you ever make any statement to any claim agent of any insurance company in which, in substance, or effect, you told them that you were not on the right hand side of the road?" This question was objected to on the ground that it was incompetent and that it was asked for the purpose of prejudicing the jury. The objection did not suggest that it resulted in disclosing the interest of an insurance company. The question was not answered. The colloquy between counsel which followed clearly shows that this question was asked for the purpose of attempting to impeach the witness regarding his former statement that, at the time of the collision he was driving on his right-hand side of the roadway. The position which his machine occupied with relation to the center of the road was vital upon the ques-

tion of his negligence. This question evidently had no reference to any insurance company other than the intervener. It seems reasonable to assume the jury must have so understood it.

Reference to an insurance company was again made by the witness Keesler, who was called in behalf of the defendants. He lived in the vicinity where the accident occurred. He saw one of the automobiles pass just before the accident at a high rate of speed, and heard the impact of the machines. He immediately went to the scene of the accident. He testified that he examined the tracks of the machines, and saw skid marks which were left by the tires of the truck, indicating that its left wheels were traveling near the center of the road at the time of the collision, or slightly on the right-hand side of this center line. On cross-examination of this witness by Mr. Boone, it developed that the witness had discussed this feature of the case about two weeks after the accident occurred. In an evident attempt to develop a showing of undue interest on the part of the witness, or conflicting statements, the following examination occurred: "Q. I suppose . . . somebody talked to you [about these skid marks] that is perfectly natural? A. Yes, they asked me if they were near the center . . . . Q. You started to say that somebody came and asked you some questions about the accident? A. There was a man came into the field later on, I don't know just how many days it was—Q. Who was that man, do you know? A. No, I don't know, I don't know his name. It seems to me like it was an insurance man. Q. I see. Now you don't remember the conversation you had with him? A. Well, part of it. . . . Q. He asked you if that truck was near the center of the road?" This question was objected to on the ground that it was incompetent and hearsay evidence. The objection was overruled. The witness was further asked: "Then, for the first time . . . [when this man discussed with you the location of these skid marks] it came to your mind as to whether they were . . . in the center of the road? A. Yes." This cross-examination was legitimate, even though it did incidentally develop the fact that an insurance man interviewed the witness. The question as to the accuracy of the statement that the marks which were left by the tires of the truck

appeared on its proper side of the roadway, was important. His recollection regarding this matter, and the question as to whether the importance of the location of these skid marks was first suggested to him by the man who interviewed him two weeks after the accident occurred, were all proper subjects of examination. Moreover, it may be reasonably assumed the jury concluded this insurance man, to whom the witness referred, was a representative of the intervener and not an insurer of the defendants. That would seem to be the natural inference under the circumstances. There was no effort to disabuse their minds of this inference. The jury knew from the complaint in intervention just what interest this company had in the litigation. The purpose of the examination appears to have been in good faith. It was therefore not prejudicial.

▉ A plaintiff may not be deprived of the benefit of proper cross-examination in a suit for damages which is based upon alleged negligence merely because it may incidentally result in disclosing the fact that a surety company is interested in the outcome of the action. (*Cozad* v. *Raisch Imp. Co.*, 175 Cal. 619 [166 Pac. 1000]; *Dermer* v. *Pistorcsi*, 109 Cal. App. 310 [293 Pac. 78]; 4 Blashfield, Cyc. of Automobile Law, p. 1521, sec. 19.) In the authority last cited it is said: ''The fact of such insurance may, however, incidentally and unavoidably appear. There are many instances in which it may legitimately be developed in cross-examination, and . . . if it tends to prove any issue in the case or is relevant or material for any purpose, it cannot be excluded on the ground that it may tend to prejudice the defendant.''

▉ Counsel for the plaintiff are charged with prejudicial conduct in the manner in which they examined certain witnesses. An illustration of this alleged objectionable conduct appears in the following question which was addressed to a young man who was called on behalf of the defendants: ''Q. Now, son, you say that you could not see this car very clearly that morning?'' Reference to this young man as ''son'' may have lacked the due consideration which every witness is entitled to. It may have been facetious and unwarranted. An effort to discredit the witness, however, by counsel's manner of addressing him, does not appear from the printed record. Counsel disavowed any such

intention. We are unable to say, from the record, there was anything offensive or prejudicial in the treatment of the witnesses on the part of plaintiff's attorneys.

■ Numerous instructions which were given to the jury at the request of the plaintiff are challenged as erroneous. It is contended they belong to the condemned class of so-called formula instructions which recite certain facts favorable to the party offering the charge, and then end by directing the jury to find a verdict accordingly. The appellant says: "The type of instructions in the instant case is probably unheard of in the history of this type of litigation. Practically every instruction is one for a directed verdict."

Such instructions are seriously objectionable. They frequently amount to an argument rather than a fair discussion of the law. It has repeatedly been held that such formula instructions which omit essential elements of the transaction will require a reversal of the judgment. (*Douglas* v. *Southern Pac. Co.*, 203 Cal. 390, 393 [264 Pac. 237].)

The jury was elaborately charged in the present case. Twenty instructions were given at the request of the plaintiff and thirty-two in behalf of the defendants. Six of the plaintiff's instructions do purport to recite facts or state principles of law, and conclude by saying, "If the jury believe from the evidence" the preceding hypothesis of facts or law, "then the plaintiff is entitled to recover". Upon carefully examining each of these challenged instructions, while we do not commend this form, we are of the opinion they do not constitute prejudicial error.

Upon the contrary, we have also examined the instructions which were given at the request of the defendants and find that the vice complained of by the appellants appears much more flagrant in their own charge. Thirty-two instructions were given in behalf of the defendants. Many of them are much more favorable to them than they were entitled to. Eighteen of these charges purport to recite facts or summarize principles of law and then direct the jury that if they find the foregoing to be true "then your verdict must be for the defendant". Many of the defendants' instructions were seriously objectionable. Argumentative and formula instructions should be rejected. We would emphasize the danger of offering instructions couched

in this form. The office of instructions is to inform the jury of the principles of law pertinent to the facts of the particular case. Too frequently counsel assume that the charge to the jury is an opportunity to argue their cause. In the present case the appellants certainly should not complain of formula instructions.

■ Plaintiff's instruction number four which is challenged, was given as follows: "You are further instructed that the uncontradicted and unimpeached testimony of a credible witness tending to establish an issuable fact in this case may not be arbitrarily disregarded by you, and such uncontradicted and unimpeached testimony, if any, must be accepted by you as proof of the facts which it is offered to establish, unless such testimony is so inherently incredible and impossible as to amount to no evidence at all."

It is argued this charge is erroneous for the reason that the uncontradicted evidence of a witness may be refuted by the physical facts or by the apparent improbability of his story. Instructions which appear to invade the jury's exclusive province of passing upon the weight of all evidence should be avoided. This particular instruction, however, seems to be harmless. The jury were previously charged that they were the "exclusive judges of the credibility of the witnesses and of the weight of the testimony"; that in determining the weight and sufficiency of the evidence the jury should take into consideration the manner of testifying, the interest of the witness, the probability and reasonableness of his story and his opportunity for obtaining knowledge of the facts concerning which he testifies. It will be observed the jury is here informed that it is only the "uncontradicted" evidence which may not be "arbitrarily disregarded". In other words, if the evidence discloses physical facts in conflict with the oral testimony of a witness, or the story of the witness is improbable or unreasonable, it is thereby contradicted. The jury were elsewhere clearly instructed that they were the exclusive judges of the weight and sufficiency of the evidence. Moreover, at the request of the defendants the following charge was also given to the jury: "You are instructed that if you believe from the evidence that the statement of any witness who has testified is contrary to the physical facts, you should disregard this testimony in so far as the same is

contradicted by proven physical facts." The foregoing challenged instruction is therefore not prejudicial.

It is claimed that plaintiff's charge number twelve falls within the condemned class of formula instructions because it omits the necessary element applying to the doctrine of contributory negligence upon which defense the appellants rely. This instruction is not as clearly expressed as it might have been. In effect, however, it does include the doctrine of contributory negligence. This challenged instruction reads in part: "If the jury believe from the evidence that the injury complained of was 'proximately caused by the negligence of the defendants as charged in the complaint, and the plaintiff acted as was reasonably to be expected of a person of ordinary care and prudence in the situation in which he found himself placed, then the plaintiff is entitled to recover."

Contributory negligence which will bar a recovery for injuries sustained by the plaintiff is such negligence as amounts to an absence of ordinary care on his part. (19 Cal. Jur. 644, sec. 74.) In substance, this is exactly what the last paragraph of the preceding instruction declares. The language which is there used is more favorable to the defendants than they were entitled to have given to the jury. The negligence of a plaintiff which will bar him from recovering damages, must contribute to some extent to the cause of the injuries which he sustained. In this challenged instruction, however, the jury were told, in effect, that the plaintiff could recover damages only, provided the negligence of the defendants proximately caused the injuries sustained, and that the plaintiff also exercised ordinary care for his own safety, whether the plaintiff's lack of prudence contributed to his injuries or not. The defendants may not complain of the giving of an instruction otherwise correct which is more favorable to them than they were entitled to. The jury was elsewhere fully instructed on the subject of contributory negligence. This instructon is not erroneous.

The appellants also complain of the giving of plaintiff's instructions numbers thirteen and twenty-two, which are applicable to the doctrine of contributory negligence. In the first of these last-mentioned instructions the jury was correctly charged that, "Contributory negligence

is an affirmative defense to be established by the defendants, unless the evidence on the part of the plaintiff shows contributory negligence on his part." (45 C. J., p. 1141, sec. 755.) This same instruction further declares that the defendants must affirmatively show that the negligence of the plaintiff "directly or proximately *contributed*" to the cause of the injuries which were sustained. This last paragraph may reasonably be supplemented with the previous statement of the same instruction to the effect that "evidence on the part of the plaintiff" may be sufficient to establish contributory negligence, even though the defendants fail to affirmatively prove it. The use of the words "directly or proximately" created an unwarranted limitation of the rule, and should have been omitted from the foregoing instruction. However, we are of the opinion the jury was not misled by these words, for in defendants' instruction number seven they were charged: "If you find therefore from the evidence, that Harry J. Elsey violated any of the rules of law, or the duties imposed upon him as given in these instructions, and such act or omission on his part contributed to the happening of this accident, *even in the slightest degree,* it is your sworn duty to find a verdict in favor of the defendants." Negligence of the plaintiff which contributed to his injuries either directly and proximately or even remotely would be sufficient to bar his recovery. (*Straten* v. *Spencer,* 52 Cal. App. 98, 105 [197 Pac. 540, 543].) It is, however, true in the present action, as it was appropriately stated in the case last cited: "It must be said that under the evidence any negligence of the plaintiff [which may appear] must have been proximate and not remote. There being no evidence of any remote negligence on the part of plaintiff, the omission of the proper qualifying expression could not have been prejudicial."

▪ Plaintiff's instruction number twenty-two is challenged because the jury is told that the burden is upon the party who relies on the defense of contributory negligence to prove it so as to "satisfy the jury by a fair preponderance of the evidence". It is error to charge a jury in a civil case that facts must be proved by evidence sufficient to "convince the minds", or "satisfy the jury". But in the present case the jury was told that their minds might

be satisfied by a "fair preponderance of the evidence". The use of the words "satisfy the jury" might well have been omitted. We are of the opinion, however, this charge was not misleading. The very next instruction which was given to the jury declared that "The defense of contributory negligence is a defense to be affirmatively established by the defendant *by a fair preponderance of the evidence,* unless such negligence is shown or can be inferred from the evidence adduced in support of the plaintiff's case." A correct definition of the meaning of "preponderance of evidence" was also given to the jury. In the case of *Hutson* v. *Southern Cal. Ry. Co.,* 150 Cal. 701, 705 [89 Pac. 1093, 1095], relied upon by the appellants, a similar instruction was given to the jury, including the following language: "The burden of proof of such contributory negligence rests upon the defendant, unless it proves the same *to your satisfaction* by a preponderance of the evidence." The Supreme Court there said: "It would be better to omit the words here italicized." Although the language employed in that case, to wit, "to your satisfaction", which is similar to the challenged language in the present case, was criticised, it was not held to constitute reversible error.

This same instruction is also criticised in the present case because it fails to include the qualification that the defendants are not required to affirmatively prove contributory negligence when the plaintiff's own evidence sufficiently discloses his lack of ordinary care. This instruction, together with the preceding one heretofore discussed, and number twenty-three, which follows immediately thereafter, may all be considered parts of the same charge on contributory negligence. They were read together and are applicable to the same subject matter. So far as the effect upon the jury is concerned it is immaterial that these three sections of the same subject matter should have been separately numbered and separately signed by the judge. Instructions number twelve and number twenty-three each clearly and specifically announces the rule with respect to the qualification, the omission of which is criticised as erroneous. The jury could not have been misled by this omission under the circumstances of this case.

Finally, this same instruction is challenged because certain acts and omissions of alleged negligence on the part

of the plaintiff are recited without including necessary elements thereof. This portion of the instruction reads: "If you find that the proximate cause of whatever injuries plaintiff has shown he has sustained by reason of the collision, was the failure of the defendant Chester Domecq to drive and operate his truck on his right side of the middle of the highway, or by reason of failing to have his truck lighted, *as elsewhere herein instructed,* then I charge you you must find a verdict in favor of the plaintiff . . . "

It is claimed this portion of the charge is defective because it fails to inform the jury that under certain circumstances the defendants' machine might be lawfully on the wrong side of the highway without any fault on the part of the driver, and that the existing condition of the atmosphere enabling one to discern objects at a distance might not require the lights to be switched on. The evidence discloses no physical obstructions of the highway, or other reason which would justify the defendants in traveling on the wrong side of the road. The instruction specifically refers to the circumstances which would render an absence of lights unlawful and negligent by a use of the phrase, "as elsewhere herein instructed". The attention of the jury is thereby called to these other circumstances which, in effect, are thereby incorporated as a part of the instruction. The jury was very fully charged with reference to the applicable provisions of the California Vehicle Act. Section 99 of this act was quoted as follows: "Every vehicle, when upon any public highway in this state . . . when there is not sufficient light to render clearly discernible a person, vehicle, or other substantial object on the highway at a distance of 200 feet ahead, shall be equipped with lighted lamps and lighted headlights . . . " The jury were elsewhere charged that they were the sole judges as to whether the atmospheric condition required the head-lamps to be lighted under the circumstances of this case. ■ There is no doubt that the prevailing of a fog so dense as to render an object upon the highway undiscernible at a distance of two hundred feet would require the use of lighted lamps just as conclusively as the obscurity of objects on account of the presence of darkness would also require the headlights to be switched on. We are of the opinion this instruction was not erroneous.

■ Plaintiff's instruction number seventeen appears to contain a complete and correct statement of the law applicable to the facts therein recited. After directing the jury that if they find from the evidence that the defendant Chester Domecq was negligently operating his machine on the wrong side of the roadway or without lights, the charge concludes with this language: "If you should also find that either or any of the aforesaid acts or omissions, if any . . . were the proximate cause of any injuries sustained by the plaintiff and if you also find that the plaintiff was not guilty of contributory negligence, then your verdict must be for the plaintiff." We are unable to observe any fatal defect in this instruction. It bases the conclusion of the jury upon a finding of a specific "negligent" act or omission on the part of the defendant, which became the proximate cause of the injuries complained of, and made this decision dependent upon plaintiff's freedom from contributory negligence. This was a correct statement of the law. It includes all necessary elements. It is not erroneous.

■ Plaintiff's instruction number twenty-four quoted section 99 of the California Vehicle Act regarding the necessity of maintaining lighted lamps under specified conditions. The instruction then declared that the violation of this statute, when the atmospheric condition required its enforcement would constitute negligence *per se*. The instruction then closed by stating that the negligent violation of this statute, "if such negligence . . . was the proximate cause of whatever injuries the plaintiff sustained, and if you find the plaintiff was not guilty of contributory negligence, then your verdict must be for the plaintiff". This instruction is not erroneous.

■ Plaintiff's instruction number twenty-seven contains a detailed statement of the character of head-lamps required by the provisions of section 100 of the California Vehicle Act. It then concludes by saying that if the jury found that the defendants did not have such lights burning at the time the accident occurred, and that the atmospheric conditions required them, in order to fulfill the statute, that such omission would constitute negligence, which, if it became the proximate cause of the accident, would render the defendants liable for damages, provided the plaintiff was also found to be free from contributory

negligence. The appellants complain because the instruction declares that the omission of statutory requirements becomes negligence *per se* regardless of the result thereof. They claim that it is not negligence unless the omission "proximately causes the accident". The appellant is mistaken in this theory. The omission of a statutory requirement in the operation of an automobile in the absence of a valid excuse therefor, constitutes negligence *per se.* All negligence, however, is not actionable. This negligence is not actionable unless it becomes the proximate cause of the injuries sustained. In the present case the liability of the defendants was specifically stated to be dependent upon the jury also finding that the negligence was the proximate cause of the injuries complained of. This instruction is not erroneous. There appears to be nothing in the case of *White* v. *Davis,* 103 Cal. App. 531 [284 Pac. 1086], upon which the appellants rely, contrary to the foregoing conclusion.

Plaintiff's instruction twenty-nine contains a correct statement of the liability of a master for the negligence of his agent or servant which occurs in the performance of the servant's employment. Number thirty contains a correct declaration of the liability of a person for the negligent violation of section 122 of the California Vehicle Act, in failing to drive upon the right half of a public highway unless it is impracticable to do so. This section is correctly quoted and applied. Number thirty-one contains a correct charge respecting the liability of a parent under section 62b of the California Vehicle Act, for the negligence of a minor child, whose application for his. driver's license the parent has signed. The last three instructions are based upon facts which are conceded by the pleadings. Neither one of them is erroneous.

Instructions numbers fourteen, fifteen and twenty-six do not appear to be subject to the criticism directed against them by the appellants. Each of these instructions applies to the measure of damages which may be awarded under circumstances such as are disclosed by the facts of this case. It is claimed these charges erroneously authorize the allowance of future prospective damages contrary to the provisions of section 3283 of the Civil Code. All that the appellants say regarding these instructions is that,

"To allow the jury to estimate and give future damages which are not certain and absolute allows them to run altogether too far into the realms of feeling and fancy." It is true that speculative and uncertain damages may not be allowed. The jury were specifically told they might consider only "such evidence as may have been produced", respecting the plaintiff's earning ability in the business, vocation or trade which he was prepared to follow, together with his loss thereof on account of the injuries which he sustained. The evidence does definitely show the nature of his occupation and training, together with his previous earning ability. A physician further testified that in addition to his broken arms and other external injuries, he was also internally injured. In support of the judgment, in the absence of any reference on the part of the appellant, to a deficiency of evidence, we must assume the record adequately furnishes evidence of the exact future loss of the plaintiff. The appellants do not even state there is an absence of such testimony. We are pointed to no evidence which warrants us in assuming that the jury speculated on the plaintiff's future loss. The amount of the judgment does not indicate that future loss was taken into consideration. We are of the opinion these instructions on the measure of damages were not erroneous.

█ Considering the serious injuries which were sustained by the plaintiff, and the facts of the case, we are persuaded there was no miscarriage of justice. If there are any technical errors in the many instructions which were given in the charge to the jury, this in an eminently proper case to apply the support of section 4½ of article VI of the Constitution.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 6, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 6, 1931.